UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SUZANNE WIMSATT** | * | CIVIL ACTION NO.: |
| Plaintiff | * | |
| | * | SECTION "    " |
| **VERSUS** | * | |
| | * | JUDGE: |
| **NIDAL JABER** | * | |
| Defendant | * | MAG. JUDGE: |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Suzanne Wimsatt ("Plaintiff"), who represents the following:

**PARTIES**

**1.**

Plaintiff is a person of the full age of majority and a domiciliary of Blount County, State of Tennessee.

**2.**

Made Defendant herein is Nidal Jaber ("Defendant"), a person of the full age of majority and a domiciliary of Orleans Parish, State of Louisiana.

**JURISDICTION AND VENUE**

**3.**

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship.

**4.**

Venue is proper under 28 U.S.C. § 1391(b) because it is the judicial district where Defendant resides and, further, where a substantial part of the events or omissions giving rise to the claim occurred.

**BACKGROUND**

**5.**

From Summer 2015 to April 2021, Plaintiff and Defendant were partners in various real estate activities in New Orleans, Louisiana.

**6.**

On April 16, 2021, Defendant notified Plaintiff that he had unilaterally sold the most valuable partnership asset and that he was pocketing the entire sale proceeds for himself. *See* Email from Nidal Jaber to Suzanne Wimsatt, dated April 16, 2021, attached hereto as Exhibit "A".

**7.**

Initially, in Summer 2015, Plaintiff and Defendant agreed to jointly purchase, renovate, and sell immovable property in New Orleans, Louisiana. Shortly into the venture, in late 2015 or early 2016, Plaintiff and Defendant decided to use the properties for short-term rentals on Airbnb rather than "flipping" them.

**8.**

Though initially Plaintiff and Defendant agreed to evenly split contributions and profits, Plaintiff made significantly greater contributions to the business over the life of the partnership.

**9.**

Plaintiff and Defendant agreed that Plaintiff would provide bookkeeping services and Defendant would manage the properties and rental business without compensation to either party.

**10.**

Plaintiff and Defendant set up limited liability companies for each of the properties, for which Plaintiff was named as the sole member.

**11.**

Plaintiff and Defendant set up bank accounts for each of the properties. Both Plaintiff and Defendant had unfettered access to the companies' bank accounts.

**12.**

Funds were continuously borrowed from one company's bank account to another's in order to cure any cash flow deficiencies.

**13.**

On or about October 22, 2015, Plaintiff and Defendant purchased immovable property located at 2630 Peniston Street, New Orleans, Louisiana 70115 (the "Peniston Property").

**14.**

On or about February 2, 2016, Plaintiff and Defendant purchased immovable property located at 2106 Josephine Street, New Orleans, Louisiana 70113 (the "Josephine Property").

**15.**

On or about May 17, 2016, Plaintiff and Defendant purchased immovable property located at 3101 Palmyra Street, New Orleans, Louisiana 70119 (the "Palmyra Property").

**16.**

Starting in late 2016, Plaintiff and Defendant created an Airbnb account to lease the Peniston Property. Subsequently, the Palmyra Property and Josephine Property were also leased through this same account. No other properties were leased on this account.

**17.**

In or around Summer 2019, the City of New Orleans passed sweeping legislation that required a property be subject to a homestead exemption in order to qualify for a short-term rental permit.

**18.**

At this time, title for the Palmyra Property was in the name of 3101 Palmyra, LLC (the "Palmyra LLC"). Plaintiff and Defendant agreed to transfer title to Defendant's name individually so that he could apply for a homestead exemption at the Palmyra Property so that the partnership could qualify for a short-term rental permit.

**19.**

At this time, the Palmyra Property was subject to a mortgage in the Palmyra LLC's name. Plaintiff and Defendant agreed to pay off the remaining loan balance for the Palmyra Property so that title could be transferred from the Palmyra LLC to Defendant.

**20.**

On or about October 16, 2019, Plaintiff and Defendant used monies borrowed from the Peniston LLC and the Josephine LLC, as well as funds from the Palmyra LLC, to pay-in-full the remaining loan balance on the Palmyra Property. The result of the transaction was that the Palmyra Property was now completely debt-free.

**21.**

On or about January 8, 2020, Plaintiff (on behalf of the Palmyra LLC) and Defendant executed a quitclaim deed to transfer the Palmyra Property to Defendant's name. No monies were exchanged in connection with the transfer.

**22.**

On or about April 9, 2021, Defendant surreptitiously sold the Palmyra Property to Mohamad Saleh for a purchase price of $645,000.00. He never informed Plaintiff of his intent to do so prior to the sale.

**23.**

On April 16, 2021, Defendant informed Plaintiff that he had sold the Palmyra Property and was keeping the entirety of the proceeds himself. *See* Exhibit "A".

**24.**

On June 21, 2021, Plaintiff sold the Peniston Property for a purchase price of $560,000.00. The property owed more on its loan than the purchase price, so Plaintiff was forced to pay $57,227.52 at the closing to pay off the mortgage and closing costs.

**25.**

On May 13, 2021, Plaintiff (on behalf of 2106 Josephine, LLC) sold the Josephine Property for a purchase price of $329,000.00. Plaintiff's net gain from the sale of the Josephine Property, after accounting for the repayment of the mortgage loan and closing costs, was $113,709.02.

## CAUSE OF ACTION 1:
## SALE OF THE PALMYRA PROPERTY

**26.**

Plaintiff hereby incorporates Paragraphs 1-25 as if they were copied herein *in extenso*.

**27.**

On January 8, 2020, Plaintiff (on behalf of 3101 Palmyra, LLC) transferred the Palmyra Property to Defendant via quitclaim deed.

**28.**

Upon information and belief, Plaintiff believes that Defendant planned to cut her out of the Palmyra Property sale prior to the quitclaim.

**29.**

The resulting fraud constitutes a vice of consent that vitiates the January 8, 2020 quitclaim.

**30.**

Alternatively, the January 8, 2020 quitclaim constitutes a simulation because the parties intended that the contract would produce no effects between them.

**31.**

Whether by fraud or by simulation, the January 8, 2020 quitclaim had no effect on the parties, and ownership of the Palmyra Property remained with the partnership or with the partners.

**32.**

On April 9, 2021, Defendant unilaterally sold the Palmyra Property without ever consulting Plaintiff.

**33.**

Defendant's sale of the Palmyra Property constitutes a breach of fiduciary duty owed to the partnership and to his partner as set forth in La. C.C. art. 2809.  Moreover, the act was accomplished through fraud and in bad faith.

**34.**

Alternatively, Defendant's sale of the Palmyra Property constitutes an unlawful alienation of immovable property owned in indivision by Plaintiff and Defendant and was accomplished through fraud and in bad faith.

**35.**

Plaintiff was deprived of lost rental income and lost profits because of Defendant's sale of the Palmyra Property.

**36.**

Plaintiff is thus entitled to economic damages that represent the lost rental income and lost profits resulting from the sale of the Palmyra Property. Plaintiff is also entitled to attorney's fees, costs, and expenses.

**37.**

Further, upon information and belief, Plaintiff contends that the Palmyra Property could have garnered a higher sale price based on fair market value of similar properties at the time, but that Defendant sold the Palmyra Property to his friend, Mohamad Saleh, at a discount.

**38.**

Thus, Defendant's sale of the Palmyra Property constitutes a breach of his fiduciary duty owed to the partnership and to his partner.

**39.**

Plaintiff is entitled to economic damages that represent the difference between the fair market value of the Palmyra Property on April 9, 2021 and the $645,000.00 sale price. Plaintiff is also entitled to attorney's fees, costs, and expenses.

**CAUSE OF ACTION 2:**
**UNLAWFUL DISTRIBUTION AND/OR CONVERSION OF PARTNERSHIP FUNDS**

**40.**

Plaintiff hereby incorporates Paragraphs 1-39 as if they were copied herein *in extenso*.

**41.**

The first time that Plaintiff was informed that Defendant wished to terminate the partnership was the April 16, 2021 email.  *See* Exhibit "A".

**42.**

The Palmyra Property was owned by the partnership or the partners at the time it was sold, and thus the sale proceeds were a partnership asset.

**43.**

Defendant's taking of the entire $645,000.00 sale proceeds constitutes intentional breaches of fiduciary duties, intentional tortious misconduct, and intentional unlawful distribution and/or conversion of partnership assets.  Moreover, these acts were accomplished by fraud and bad faith.

**44.**

Louisiana Civil Code art. 2833 provides that, partnership assets shall be liquidated and divided in the following order: (1) secured creditors; (2) unsecured creditors who are not partners; (3) unsecured creditors who are partners; (4) restoration of capital contributions; and (5) surplus divided among the partners proportional to their respective interests.  Further, Louisiana Civil Code art. 2803 states that capital contributions are restored according to capital contributions made.

**45.**

In the course of liquidating the remaining partnership assets, namely the Josephine Property and the Peniston Property, Plaintiff was forced to repay the partnership's burdens to its creditors by herself.

**46.**

Plaintiff is thus entitled to economic damages in the amount of her pro rata capital contribution after repayment of all partnership liabilities to creditors.  At this time, that figure is estimated to be $579,974.21.  Plaintiff is also entitled to attorney's fees, costs, and expenses due to Defendant's fraud.

## CAUSE OF ACTION 3:
## UNLAWFUL ENCUMBRANCE OF PARTNERSHIP ASSET

**47.**

Plaintiff hereby incorporates Paragraphs 1-46 as if they were copied herein *in extenso*.

**48.**

In December 2020, Plaintiff learned that Defendant had entered into a year-long lease of the second and third stories of the Peniston Property with his friend, Tim Benton, for $2,500.00 per month.

**49.**

Plaintiff later learned that Defendant originally leased the Peniston Property to Mr. Benton in September 2020; however, no rental income was deposited into the Peniston Property's bank account for September 2020, October 2020, and November 2020, which would have amounted to $7,500.00.

**50.**

Upon information and belief, Plaintiff believes that Defendant either failed to charge his friend rent for three months, or was paid rent and kept the funds personally.

**51.**

Further, upon information and belief, Plaintiff contends that the leased premises could have yielded a higher rent than $2,500.00 per month, but that Defendant rented the Peniston Property to his friend for a discount.

**52.**

Further still, Defendant's decision to enter into a long-term lease with Mr. Benton rather than continuing to list the unit on Airbnb, as was agreed, resulted in lost profits to the partnership.

**53.**

Defendant's conduct constitutes intentional breaches of his fiduciary duties owed to Plaintiff and potentially intentional conversion of funds owed to the partnership.

**54.**

Plaintiff is entitled to economic damages in the amount of $7,500.00, plus interest, for the lost rental income in the months of September 2020, October 2020, and November 2020; lost profits equal to the difference between the rent price and fair market value; and lost profits equal to the difference between what the Peniston Property would have received in Airbnb rental income and the rental income received from Mr. Benton over the year-long lease.

**CAUSE OF ACTION 4:**
**CONVERSION OF GOODWILL ASSOCIATED WITH AIRBNB ACCOUNT**

**55.**

Plaintiff hereby incorporates Paragraphs 1-54 as if they were copied herein *in extenso*.

**56.**

The partnership used the one Airbnb account for all three properties. The Airbnb account was registered with Defendant's email address and phone number but was associated with Plaintiff's name, tax identification number, and social security number.

**57.**

Upon information and belief, many of the short-term rental agreements on Airbnb were made due to the high star rating of the partnership's account.

**58.**

In February 2021, Plaintiff requested access to the Airbnb account but was denied same by Defendant.

**59.**

In March 2021, Plaintiff discovered that the properties were no longer listed on Airbnb.

**60.**

Upon information and belief, Plaintiff avers that Defendant intentionally removed the listing and locked Plaintiff out of the Airbnb account as part of a premeditated effort to convert the partnership's Airbnb account into his own personal account.

**61.**

Defendant's acts have deprived Plaintiff of the goodwill associated with the Airbnb account should she seek to use Airbnb in the future.

**62.**

Plaintiff is thusly entitled to economic damages in the amount equal to the portion of the goodwill value of the partnership's Airbnb account.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Suzanne Wimsatt, prays that the Defendant, Nidal Jaber, be duly cited to appear and answer this Petition and that, after due proceedings are had, there be a judgment herein in favor of Plaintiff for economic damages for Defendant's theft of Plaintiff's portion of the Palmyra Property's sale proceeds, the difference between the Palmyra Property's sale price and fair market value, the lost rental income and profits due to the sale of the Palmyra

Property, the difference between the Peniston Property's long-term lease rental income and short-term lease rental income, and the value of the Airbnb account's goodwill, as well as attorney's fees, costs, expenses, legal interest from the date of judicial demand, and for all general and equitable relief as this Court deems fit.

          Respectfully Submitted,

          **KOCH & SCHMIDT, L.L.C.**

          */s/ F. Evans Schmidt*
          F. EVANS SCHMIDT, LA Bar #21863
          JOSEPH F. SCHREMPP, LA Bar #38396
          650 Poydras Street, Suite 2660
          New Orleans, Louisiana 70130
          Telephone: (504) 208-9040
          Facsimile: (504) 208-9041
          Email: feschmidt@kochschmidt.com
                 jschrempp@kochschmidt.com
          ***Counsel for Plaintiff, Suzanne Wimsatt***