## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SUZANNE WIMSATT**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 22-1012**

**NIDAL JABER**                                        **SECTION "O"**

## <u>ORDER AND REASONS</u>

Before the Court in this dispute between alleged former partners in a short-term-rental business is Defendant Nidal Jaber's motion[1] for summary judgment dismissing the claims brought by Jaber's alleged former business partner, Plaintiff Suzanne Wimsatt. Wimsatt alleges Jaber breached fiduciary duties and converted funds belonging to the alleged partnership by unilaterally selling one of the partnership's short-term-rental properties and keeping the sale proceeds; by leasing another of the partnership's properties to a friend without collecting rent or without depositing collected rent in the proper account; and by locking Wimsatt out of the Airbnb account the parties used to lease the properties. Even assuming *arguendo* that a partnership between Jaber and Wimsatt existed, for multiple independent reasons, none of Wimsatt's claims survives summary judgment. Accordingly, for these reasons and those that follow, Jaber's motion for summary judgment is **GRANTED**.

---

[1] ECF No. 53. Just over a month before Jaber filed his motion for summary judgment, Jaber filed a "Rule 12 and/or Rule 56 motion." ECF No. 37. But Jaber withdrew that earlier-filed "Rule 12 and/or Rule 56 motion" during the April 25, 2024 oral argument on the motions: Jaber's counsel agreed that Jaber had "effectively withdrawn" the "Rule 12 and/or Rule 56 motion," *id.*, and that Jaber was proceeding on the later-filed motion for summary judgment, ECF No. 53. Because Jaber has withdrawn his earlier-filed "Rule 12 and/or Rule 56 motion," ECF No. 37, this Order and Reasons addresses the merits of the later-filed motion for summary judgment, ECF No. 53, only.

## I.   BACKGROUND

Plaintiff Suzanne Wimsatt and Defendant Nidal Jaber were alleged partners in a New Orleans-based short-term-rental business from summer 2015 until April 2021.[2] Wimsatt and Jaber initially "agreed to jointly purchase, renovate, and sell immovable property."[3] But they soon shifted gears.[4] Rather than "flipping" properties as they had planned, Wimsatt and Jaber decided to use the properties for short-term rentals on Airbnb.[5] Wimsatt and Jaber agreed that Wimsatt would provide bookkeeping services and that Jaber would manage the properties and the short-term-rental business; neither one would be compensated for any of their work.[6]

Wimsatt and Jaber later set up bank accounts and limited liability companies for each of the short-term-rental properties.[7] Both Wimsatt and Jaber "had unfettered access" to the bank accounts; funds "were continuously borrowed" from one bank account to another "in order to cure any cash[-]flow deficiencies."[8]

This lawsuit involves three of the parties' properties in New Orleans. The first property was located at 2630 Peniston Street (the "Peniston Property").[9] Wimsatt bought the Peniston Property in February 2016.[10] The second property was located

---

[2] ECF No. 1 at ¶ 5. Because Wimsatt's complaint is verified, *see* ECF No. 1-3 at 1, the well-pleaded factual allegations in it are considered competent summary-judgment evidence to the extent that those allegations are not conclusory and otherwise comply with the requirements of Federal Rule of Civil Procedure 56(c)(4). *See generally King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

[3] ECF No. 1 at ¶ 7.

[4] *Id.*

[5] *Id.*

[6] *Id.* at ¶ 9.

[7] *Id.* at ¶10.

[8] *Id.* at ¶¶ 11–12.

[9] *Id.* at ¶ 13.

[10] ECF No. 53-5 at 6. Under Local Civil Rule 56.2, "[a]ll material facts in the moving party's statement [of uncontested material facts] will be deemed admitted, for purposes of the motion [for summary judgment], unless controverted in the opponent's statement." Here, Wimsatt's list of

at 2106 Josephine Street (the "Josephine Property").[11] An entity traceable to Wimsatt, 2106 Josephine, LLC, bought the Josephine Property in March 2016.[12] 2106 Josephine, LLC's only manager-member is Laurissa, LLC, which in turn has one manager-member: Wimsatt.[13] The third property was located at 3101 Palmyra Street (the "Palmyra Property").[14] 3101 Palmyra, LLC, another entity traceable to Wimsatt, bought the Palmyra Property in May 2016.[15] 3101 Palmyra, LLC's only manager-member is Laurissa, LLC, whose only manager-member is Wimsatt.[16]

Wimsatt and Jaber used an Airbnb account to lease all three properties.[17] The account was registered with Jaber's email address and phone number, but "associated with" Wimsatt's name, tax identification number, and social security number.[18]

---

contested material facts does not controvert the statements in Jaber's list of uncontested material facts that (1) Wimsatt purchased the Peniston Property in February 2016; and (2) Jaber never owned the Peniston Property. *Compare* ECF No. 53-2 at ¶ 5 *with* ECF No. 57-2 at ¶¶ 1–10. Thus, those facts are "deemed admitted[] for purposes of" Jaber's motion for summary judgment. *See* LOCAL CIVIL RULE 56.2; *see also Doe v. Loyola Univ.*, No. 18-CV-6880, 2020 WL 1030844, at *7 (E.D. La. Mar. 3, 2020) (explaining that "[b]ecause the plaintiff failed to controvert" facts listed in the defendant's statement of undisputed material facts, "Local Rule 56.2 requires that they be deemed admitted").

[11] ECF No. 1 at ¶ 14.

[12] ECF No. 53-5 at 4. Wimsatt's list of contested material facts does not controvert the statements in Jaber's list of uncontested material facts that (1) 2106 Josephine, LLC bought the Josephine Property in March 2016; and (2) Jaber never owned the Josephine Property. *Compare* ECF No. 53-2 at ¶ 2 *with* ECF No. 57-2 at ¶¶ 1–10. Accordingly, those facts are "deemed admitted[] for purposes of" Jaber's motion for summary judgment. *See* LOCAL CIVIL RULE 56.2; *see also Doe*, 2020 WL 1030844, at *7.

[13] ECF No. 53-7 at 1, 4.

[14] ECF No. 1 at ¶ 15.

[15] ECF No. 53-5 at 1. Wimsatt's list of contested material facts does not controvert the statements in Jaber's list of uncontested material facts that (1) 3101 Palmyra, LLC bought the Palmyra Property in May 2016; and (2) the Palmyra Property was quitclaimed to Jaber, by authentic act and without reservation, in January 2020. *Compare* ECF No. 53-2 at ¶ 3 *with* ECF No. 57-2 at ¶¶ 1–10. Accordingly, those facts are "deemed admitted[] for purposes of" Jaber's motion for summary judgment. LOCAL CIVIL RULE 56.2; *see also Doe*, 2020 WL 1030844, at *7.

[16] ECF No. 53-7 at 3, 4.

[17] ECF No. 1 at ¶ 16.

[18] *Id.* at ¶ 56.

According to the complaint, in response to short-term-rental restrictions the City of New Orleans imposed in summer 2019, Wimsatt and Jaber agreed to transfer title to the Palmyra Property from 3101 Palmyra, LLC to Jaber.[19] They did so to allow Jaber to apply for a homestead exemption, which would make the Palmyra Property eligible for a short-term-rental permit under the City's then-new restrictions.[20] A few months after the City's restrictions took effect, in fall 2019, the parties used funds borrowed from two Wimsatt-controlled entities—2106 Josephine, LLC, and 2630 Peniston, LLC—to pay off the remaining loan balance on the Palmyra Property.[21] Ultimately, 3101 Palmyra, LLC (through its sole member–manager, Wimsatt) and Jaber executed a quitclaim deed transferring title to the Palmyra Property to Jaber in early January 2020.[22]

About fifteen months after title was transferred, in April 2021, Jaber sold the Palmyra Property to a friend.[23] Jaber did not give Wimsatt notice that he intended to sell the Palmyra Property, and Jaber kept the $645,000 purchase price for himself.[24]

About a week after selling the Palmyra Property to a friend, in mid-April 2021, Jaber sent Wimsatt an email that announced the end of the parties' business relationship.[25] Among other things, Jaber's email (1) informed Wimsatt that Jaber had sold the Palmyra Property; (2) repeatedly described the parties as "business

---

[19] *Id.* at ¶¶ 17–18.
[20] *Id.* at ¶¶ 18 & 21; *see also* ECF No. 53-6 at 1–7 (quitclaim deed).
[21] ECF No. 1 at ¶ 20.
[22] *Id.* at ¶ 21; *see also* ECF No. 53-6 at 1–8.
[23] ECF No. 1 at ¶ 22.
[24] *Id.*
[25] ECF No. 1-2 at 1–3; *see also* ECF No. 57-1 at 2–4.

partners" or "partners"; (3) informed Wimsatt that Jaber did not "want to be contacted by [Wimsatt] or [Wimsatt's] family"; (4) invited Wimsatt to "take legal action" against Jaber; and (5) claimed Jaber was owed "over $1 million . . . between [his] original investment, equity interest, management fees, and Airbnb account."[26]

This lawsuit followed. Wimsatt brings four causes of action arising from the breakdown of the parties' six-year business relationship. Her first cause of action relates to Jaber's sale of the Palmyra Property.[27] Wimsatt alleges that Jaber breached fiduciary duties Jaber owed the parties' alleged partnership and Wimsatt by "unilaterally s[elling] the Palmyra Property without ever consulting" Wimsatt.[28] Wimsatt alleges that the partnership—not Jaber—owned the Palmyra Property when Jaber sold it.[29] According to Wimsatt, the quitclaim deed transferring title of the Palmyra Property to Jaber "had no effect on the parties"[30] because it was procured by fraud or "constitutes a simulation."[31] Wimsatt further alleges that Jaber sold the Palmyra Property to his friend at a discount,[32] and that Jaber's sale of the property caused Wimsatt to lose not only "rental income," but also the difference between the Palmyra Property's fair market value and the discounted $645,000 sale price.[33]

Wimsatt's second cause of action relates to Jaber's retention of the Palmyra Property sale proceeds.[34] According to Wimsatt, "[t]he Palmyra Property was owned

---

[26] ECF No. 1-2 at 1–3; *see also* ECF No. 57-1 at 2–4.
[27] ECF No. 1 at ¶¶ 26–39.
[28] *Id.*
[29] *Id.* at ¶ 31.
[30] *Id.* at ¶ 31.
[31] *Id.* at ¶ 30.
[32] *Id.* at ¶ 37.
[33] *Id.* at ¶ 39.
[34] *Id.* at ¶¶ 40–46.

by the partnership or the partners at the time it was sold, and thus the sale proceeds were a partnership asset."[35] Wimsatt alleges Jaber committed "intentional breaches of fiduciary duties, intentional tortious misconduct, and intentional unlawful distribution and/or conversion of partnership assets" when Jaber kept the $645,000 sale proceeds for the Palmyra Property.[36] Wimsatt complains that Jaber's retention of the sale proceeds for himself "forced" Wimsatt "to repay the partnership's burdens to its creditors by herself" when Wimsatt liquidated the Josephine Property and the Peniston Property.[37] Wimsatt thus seeks "economic damages in the amount of her pro rata capital contribution after repayment of all partnership liabilities to creditors."[38]

Wimsatt's third cause of action arises from Jaber's alleged rental of the Peniston Property to a friend.[39] According to Wimsatt, Jaber leased the second and third stories of the Peniston Property to one of his friends starting in September 2020 for $2,500 per month.[40] Wimsatt alleges the Peniston Property "could have yielded a higher rent," but Jaber gave his friend "a discount."[41] Wimsatt "believes" that Jaber "either failed to charge his friend for three months, or was paid rent and kept the funds personally."[42] According to Wimsatt, "no rental income was deposited into the Peniston Property's bank account" for three months: September 2020, October 2020, and November 2020.[43] Wimsatt thus alleges that Jaber breached fiduciary duties and

---

[35] *Id.* at ¶ 42.
[36] *Id.* at ¶ 43.
[37] *Id.* at ¶ 45.
[38] *Id.* at ¶ 46.
[39] *Id.* at ¶¶ 47–54.
[40] *Id.* at ¶ 48.
[41] *Id.* at ¶ 51.
[42] *Id.* at ¶ 50.
[43] *Id.* at ¶ 49.

converted funds owed to the partnership.[44] Wimsatt seeks damages of $7,500 for three months of lost rental income; lost profits equal to the difference between the $2,500 rental price Jaber charged his friend and the fair market value of the rental; and lost profits equal to the difference between the rental income that the Peniston Property would have generated if it had been listed on Airbnb and the rental income generated from Jaber's lease of the Peniston Property to his friend.[45]

Wimsatt's fourth and final cause of action involves the Airbnb account the parties used to rent the three properties.[46] Wimsatt alleges that Jaber converted the "goodwill" associated with the alleged partnership's Airbnb account by "intentionally remov[ing] the listing[s]" for the properties and by "lock[ing] [Wimsatt] out of the Airbnb account."[47] For this claim, Wimsatt seeks economic damages equal to her portion of "the goodwill value of the partnership's Airbnb account."[48]

Now, Jaber moves for summary judgment dismissing Wimsatt's claims.[49] Wimsatt opposes.[50] The Court heard oral argument on April 25, 2024.[51]

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a

---

[44] *Id.* at ¶ 53.
[45] *Id.* at ¶ 54.
[46] *Id.* at ¶¶ 55–62.
[47] *Id.* at ¶ 60.
[48] *Id.* at ¶ 62.
[49] ECF No. 53.
[50] ECF No. 57.
[51] ECF No. 66.

reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

"In reviewing the record, 'the [C]ourt must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). The Court "do[es] not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis deleted) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

"[W]here the nonmovant bears the burden of proof at trial," as Wimsatt does here, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citations omitted).

"Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). "A party cannot defeat summary judgment with 'conclus[ory] allegations,

8

unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). Ultimately, "[t]he district [court] 'is free to grant summary judgment on the basis of any facts shown by competent evidence in the record.'" *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 533 (5th Cir. 2023) (quoting *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994)).

Well-pleaded factual allegations in a verified complaint are competent summary-judgment evidence to the extent that they satisfy Rule 56(c)(4). *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *King*, 31 F.3d at 346 ("A plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of FED. R. CIV. P. 56(e) [now Rule 56(c)(4)]."). Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion . . . be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Conclusory allegations do not satisfy Rule 56(c)(4) and are not competent summary-judgment evidence. *See Marquez v. Woody*, 440 F. App'x 318, 322–23 (5th Cir. 2011) (per curiam) (explaining that "conclusory statements in [a] verified complaint are insufficient to overcome [a] motion for summary judgment").

## III.  ANALYSIS

Jaber moves for summary judgment dismissing each of Wimsatt's four causes of action. Because (1) Jaber filed a properly supported motion for summary judgment pointing to the absence of evidence supporting facts material to Wimsatt's claims,[52] and (2) Wimsatt bears the burden of proving her breach-of-fiduciary-duty and conversion claims at trial, the summary-judgment burden "shift[ed]" to Wimsatt to "demonstrate[] by competent summary[-]judgment proof that there is an issue of material fact warranting trial" on each of Wimsatt's causes of action. *Lindsey*, 16 F.3d at 618 (citations omitted). Viewing the summary-judgment record and drawing all reasonable inferences in Wimsatt's favor, *see Reeves*, 530 U.S. at 150, the Court concludes that Wimsatt fails to carry her burden to point to competent summary-judgment evidence creating a genuine dispute of material fact that would preclude summary judgment on any of her causes of action. The Court takes each one in turn.

### A.      First Cause of Action

Jaber contends that the Court should grant summary judgment dismissing Wimsatt's first cause of action for "[s]ale of the Palmyra Property."[53] The Court's analysis is complicated by Wimsatt's failure to clearly identify—in her complaint, in her summary-judgment briefing, or during the April 25 oral argument—the legal theories through which she seeks relief on this count. The Court's best estimation, however, is that Wimsatt intends to assert a claim for breach of fiduciary duty only.

---

[52] *See* ECF Nos. 53 & 53-1
[53] ECF No. 1 at ¶¶ 26–39.

Under Louisiana law, a breach-of-fiduciary-duty claim has three elements: "(1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach." *Brockman v. Salt Lake Farm P'ship*, 33,938, p. 11 (La. App. 2d Cir. 10/4/00); 768 So. 2d 836, 844 (citing *Oliver v. Central Bank*, 26,932 (La. App. 2d Cir. 5/10/95); 658 So. 2d 1316)). A breach-of-fiduciary-duty claim "requires proof of fraud, breach of trust[,] or action outside the limits of the fiduciary's authority; the burden of proof is on the plaintiff." *Id.* (citing *Oliver*, 658 So. 2d at 1316).

Assuming *arguendo* that Wimsatt created a genuine dispute as to the existence of a partnership with Jaber, such that a fiduciary relationship existed, Wimsatt's breach-of-fiduciary-duty claim still cannot survive summary judgment for at least two independent reasons. First, in response to Jaber's properly supported motion for summary judgment, Wimsatt fails to carry her burden as non-movant to point the Court to competent summary-judgment evidence establishing the breach element of her claim. Second, and independently, Wimsatt fails to carry her burden as non-movant to point the Court to summary-judgment evidence establishing that the breach-of-fiduciary-duty claim belongs to her, individually—and not to 3101 Palmyra, LLC, the entity that owned the Palmyra Property before it was quitclaimed to Jaber.

### 1.    The Breach Element

Jaber is entitled to summary judgment dismissing Wimsatt's breach-of-fiduciary-duty claim because Wimsatt fails to carry her burden to create a genuine dispute as to the breach element of her claim. To carry that burden, Wimsatt had to

point the Court to summary-judgment evidence establishing that Jaber breached a fiduciary duty he owed to Wimsatt when Jaber (a) sold the Palmyra Property to a friend in April 2021 without consulting Wimsatt and (b) kept the sale proceeds.

Wimsatt fails to do so. The undisputed summary-judgment record reflects that 3101 Palmyra, LLC quitclaimed the Palmyra Property to Jaber in January 2020—by authentic act[54] and without reservation—before Jaber sold the Palmyra Property to a friend in April 2021.[55] Because 3101 Palmyra, LLC quitclaimed Jaber the Palmyra Property without reservation in January 2020, Jaber owned the Palmyra Property individually at the time of the April 2021 sale, and Jaber was free to dispose of the Palmyra Property as he wished. Thus, Jaber cannot have breached any fiduciary duty owed to Wimsatt when Jaber sold, and kept the sale proceeds of, the Palmyra Property that he owned individually and without reservation.[56]

Wimsatt's only apparent response is unpersuasive. According to Wimsatt, Jaber never owned the Palmyra Property individually because Jaber "fraudulently induced the transfer of the Palmyra Property from 3101 Palmyra, LLC to himself."[57]

---

[54] An "authentic act" is "a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed." LA. CIV. CODE ANN. art. 1833. The quitclaim is an authentic act because it was (1) executed before a notary public, Eric Oliver Person; (2) signed by each party who executed it, 3101 Palmyra, LLC (through Wimsatt as member–manager), and Jaber; (3) signed by two witnesses, Pamela H. Person and Tabitha R. Burgess; and (4) signed by Eric Oliver Person, the notary public before whom it was executed. *See* ECF No. 53-6 at 6.

[55] ECF No. 53-6 at 1–8.

[56] Wimsatt cites neither evidence nor authority supporting the proposition that Jaber's sale of the Palmyra Property he individually owned without reservation could constitute a breach of fiduciary duty. *See* ECF No. 57 at 1–8. And "Rule 56 imposes no obligation for [the] [C]ourt 'to sift through the record in search of evidence to support [Wimsatt's] opposition to summary judgment.'" *Mandawala v. Baptist Sch. of Health Profs.*, No. 23-50258, 2024 WL 1461943, at *3 (5th Cir. Apr. 4, 2024) (per curiam) (quoting *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006)).

[57] ECF No. 57 at 1.

But Wimsatt's summary-judgment response fails to identify any evidence from which a reasonable jury could find that the January 2020 quitclaim was procured by fraud.[58]

Under Louisiana law, a contract requires "consent of the parties." LA. CIV. CODE ANN. art. 1927. Consent "may be vitiated by error, fraud, or duress." LA. CIV. CODE ANN. art. 1948. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." LA. CIV. CODE ANN. art. 1953. "Fraud may also result from silence or inaction." *Id.* "There are three elements for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." *Rogers v. Malbrough*, 14-402, p. 8 (La. App. 5th Cir. 1/28/15); 167 So. 3d 868, 873 (citing *Newton v. Dongieux*, 13-776 (La. App. 5th Cir. 6/24/14); 145 So. 3d 478, 485).

Wimsatt's summary-judgment response fails to identify any evidence from which a reasonable jury could find that any element of fraud is satisfied.[59] And the Court is not obliged to "sift through the record in search of evidence to support [Wimsatt's] opposition to summary judgment." *Adams*, 465 F.3d at 164 (internal citation and quotation marks omitted). Accordingly, because Wimsatt fails to point to any evidence from which a reasonable jury could find that the January 2020 quitclaim was procured by fraud, Wimsatt's fraudulent-inducement argument fails. *Cf. Hawney*

---

[58] *See* ECF No. 57 at 1–8.

[59] *See id.*

*v. Unique Furniture Source, Inc.*, 2022-0268, p. 6 (La. App. 4th Cir. 11/2/22); 351 So. 3d 806, 811 (concluding that contracting party's consent was not vitiated by fraud because that party failed to point to evidence showing that the counterparties "misrepresented/suppressed the truth with the intention of obtaining an unjust advantage or causing loss/inconvenience"). Thus, the January 2020 quitclaim validly transferred ownership of the Palmyra Property to Jaber.

### 2.    The Right to Sue Personally for the LLC's Damages

Jaber is entitled to summary judgment dismissing Wimsatt's first cause of action for the independent reason that Wimsatt fails to carry her burden to point to evidence sufficient to create a genuine dispute as to Wimsatt's right to sue personally for damages incurred by 3101 Palmyra, LLC, the entity that owned the Palmyra Property before it was validly quitclaimed to Jaber in January 2020.

"A member shall have no interest in limited liability company property." LA. STAT. ANN. § 12:1329. Louisiana law "considers an LLC and the member(s) comprising the LLC[] as being wholly separate persons." *Ogea v. Merritt*, 2013-1085, p. 6 (La. 12/10/13); 130 So. 3d 888, 894 (citing LA. CIV. CODE ANN. art. 24). "Generally, an owner of a membership interest in a limited liability company owns no direct, personal right of action to enforce the entity's claim." *Johnston v. Vincent*, 2021-01196, p. 35 (La. 2/1/23); 359 So. 3d 896, 920 (citing 8 LA. CIV. L. TREATISE, *Business Organizations* § 34:1). "In accordance with this principle, Louisiana courts have unanimously held that members of a limited liability company do not have the individual right to sue for damages sustained by the juridical entity." *Id.* (internal

14

citations omitted). "Where the alleged loss to the individual member . . . is the same loss that would be suffered by others—such as a decline in the value of their shares— the loss is considered indirect, and the member . . . does not have the right to sue individually." *Id.* (internal citations omitted). A claim for damages based on "the loss suffered by the limited liability itself and the diminution in its assets" is considered "indirect," and an "indirect" claim "is held by [the LLC], not its owner." *Id.* at 921.

Here, Wimsatt fails to carry her burden to direct the Court to competent summary-judgment evidence establishing that her breach-of-fiduciary-duty claim belongs to her, individually, rather than to 3101 Palmyra, LLC. The undisputed summary-judgment record reflects that immediately before the January 2020 quitclaim transferring ownership of the Palmyra Property to Jaber, 3101 Palmyra, LLC owned the Palmyra Property—not Wimsatt, individually. Under Louisiana law, as a member-manager of 3101 Palmyra, LLC, Wimsatt had "no interest" in any of 3101 Palmyra, LLC's property, including the Palmyra Property. *See* La. Stat. Ann. § 12:1329. Because 3101 Palmyra, LLC—not Wimsatt—owned the Palmyra Property immediately before the January 2020 quitclaim, any alleged damage resulting from Jaber's allegedly wrongful sale of the Palmyra Property would constitute "damage sustained by the juridical entity," *i.e.*, damage sustained by 3101 Palmyra, LLC, not damage sustained by Wimsatt, individually. *Johnston*, 359 So. 3d 896, 920 (internal citations omitted). Thus, because that alleged damage is based on "the loss suffered by [3101 Palmyra, LLC] itself and the diminution in its assets," Wimsatt's claim is an "indirect" claim "held by [3101 Palmyra, LLC], not its owner," Wimsatt. *Id.* at 921.

15

Wimsatt's limited counterargument fails to persuade the Court that summary judgment should not be granted. Wimsatt contends that she "asserts a claim for her portion of the liquidated assets of the partnership following the sale by Mr. Jaber of the Palmyra Property."[60] Wimsatt expressly denies "asserting a personal claim as to any one asset owned by" 3101 Palmyra, LLC; instead, Wimsatt insists that she "is asserting her claim as to her interest in the partnership with Mr. Jaber."[61] But Wimsatt cites no summary-judgment evidence or authority supporting any of these contentions.[62] For that reason alone, Wimsatt's counterarguments are forfeited and thus necessarily fail. *See, e.g.*, *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (concluding that litigant forfeited an argument on an issue by failing to "cite a single authority or case relevant to the [issue]"). Forfeiture aside, Wimsatt's argument fails on the merits: Wimsatt disclaims that her claim is "personal," and her response otherwise confirms that her claim is "for diminution in value of her ownership interest," which makes it "indirect." *See Johnston*, 359 So. 3d at 921.

## B.    Second Cause of Action

Jaber contends that the Court should grant summary judgment dismissing Wimsatt's second cause of action for "unlawful distribution and/or conversion of partnership funds."[63] This cause of action rests on Wimsatt's allegation that Wimsatt and Jaber were in a "partnership" and that Jaber wrongfully retained proceeds from

---

[60] ECF No. 57 at 5.

[61] *Id.*

[62] *Id.* At oral argument, the Court asked Wimsatt's counsel for authority supporting the proposition that Wimsatt's breach-of-fiduciary-duty claims belonged to her, individually, rather than to 3101 Palmyra, LLC. Counsel was unable to offer any authority supporting the proposition.

[63] ECF No. 1 at ¶¶ 40–46.

the sale of a "partnership asset," the Palmyra Property.[64] Wimsatt alleges those proceeds were a partnership asset because the Palmyra Property "was owned by the partnership or the partners" when Jaber sold it.[65] As with Wimsatt's first cause of action, the Court's analysis of Wimsatt's second cause of action is complicated by Wimsatt's failure to clearly identify the legal theories on which she relies. The Court's best estimation, however, is that Wimsatt intends to assert claims for breach of fiduciary duty and conversion. Neither survives summary judgment.

Assuming *arguendo* that Wimsatt created a genuine dispute as to the existence of a partnership with Jaber, such that a fiduciary relationship existed, Wimsatt's breach-of-fiduciary-duty and conversion claims still cannot survive summary judgment for at least two independent reasons. First, the January 2020 quitclaim validly transferred ownership of the Palmyra Property to Jaber, individually, before Jaber sold the Palmyra Property to a friend in April 2021; as a result, the sale proceeds belonged to Jaber and not to the alleged partnership, and Jaber's retention of those sale proceeds to which he was entitled cannot constitute conversion or a breach of any fiduciary duty.[66] Wimsatt thus fails to carry her burden as non-movant to point to competent summary-judgment evidence from which a reasonable jury could find that the alleged partnership held the Palmyra Property when Jaber sold it

---

[64] *Id.* at ¶¶ 41–43.

[65] *Id.* at ¶ 42.

[66] In her verified complaint, Wimsatt alleges that "[t]he Palmyra Property was owned by the partnership or the partners at the time it was sold, and thus the sale proceeds were a partnership asset." ECF No. 1 at ¶ 42. This allegation is a pure legal conclusion that is not competent summary-judgment evidence. *See, e.g.*, *Marquez*, 440 F. App'x at 322–23 (explaining that "conclusory statements in [a] verified complaint are insufficient to overcome [a] motion for summary judgment").

in April 2021. Second, Wimsatt fails to carry her burden as non-movant to point the Court to summary-judgment evidence from which a reasonable jury could conclude that this claim belongs to her, individually—and not to 3101 Palmyra, LLC, the entity that owned the Palmyra Property before it was quitclaimed to Jaber.

### 1. The January 2020 Quitclaim

Jaber is entitled to summary judgment dismissing Wimsatt's second cause of action. That cause of action hinges entirely on the Palmyra Property being owned by the alleged partnership when Jaber sold it to a friend in April 2021. If the Palmyra Property was not owned by the partnership when Jaber sold it, then the Palmyra Property sale proceeds would not be "a partnership asset," and Jaber's retention of those proceeds would not amount to conversion or a breach of any fiduciary duty.

For the reasons given in Section III(A)(1) of this Order and Reasons, Jaber, individually, owned the Palmyra Property in April 2021, when Jaber sold the Palmyra Property to a friend. 3101 Palmyra, LLC had quitclaimed the Palmyra Property to Jaber, not the alleged partnership, in January 2020 by authentic act and without reservation.[67] And Wimsatt's summary-judgment response fails to identify any evidence from which a reasonable jury could find that the quitclaim was procured by fraud. Because Jaber owned the Palmyra Property when he sold it in April 2021, the sale proceeds belonged to Jaber; they were not an asset of the alleged partnership. Jaber's retention of the proceeds thus cannot constitute conversion or a breach of any fiduciary duty.

---

[67] ECF No. 53-6 at 1–8.

18

Moreover, assuming *arguendo* that a partnership existed, Wimsatt fails to point to a writing transferring ownership of the Palmyra Property from 3101 Palmyra, LLC to the alleged partnership, as would be required under Louisiana law. "A transfer of immovable property must be made by authentic act under private signature." LA. CIV. CODE ANN. art. 1839. A writing is not needed to form a partnership; however, "the transfer of immovable property to a partnership still requires a writing." *Schmidt v. J-Lu Co.*, 598 F. App'x 257, 258 (5th Cir. 2015) (applying Louisiana law). So, Wimsatt fails to identify evidence from which a reasonable jury could find that the Palmyra Property belonged to the alleged partnership as of the April 2021 sale. And thus, Wimsatt necessarily fails to create a genuine dispute as to whether the Palmyra Property sale proceeds are a "partnership asset."

Wimsatt's counterarguments fail to persuade. First, Wimsatt invokes Louisiana Civil Code Article 2806(c) and contends that "a partnership was created retroactively to the acquisition" of the Palmyra Property.[68] Article 2806(c) provides:

> C. Whenever any immovable property is acquired *by one or more persons acting in any capacity for and in the name of any partnership* which has not been created by contract as required by law, and the partnership is subsequently created by contract in accordance with Title XI of Book III of the Civil Code, the partnership's existence shall be retroactive to the date of acquisition of an interest in such immovable property, but such retroactive effect shall be without prejudice to rights validly acquired by third persons in the interim between the date of acquisition and the date that the partnership was created by contract.

LA. CIV. CODE ANN. art. 2806(C) (emphasis added).

---

[68] ECF No. 57 at 7.

Wimsatt cannot avail herself of Civil Code Article 2806(C) for the simple reason that Wimsatt fails to point to any competent summary-judgment evidence from which a reasonable jury could find that the Palmyra Property was acquired "for and in the name of" the alleged partnership between Wimsatt and Jaber.[69] *See id.* To the contrary, the quitclaim deed shows that Jaber acquired the property personally and in his own name.[70]

Second, Wimsatt contends that Jaber should be estopped from insisting that a writing was required to form the alleged partnership under Louisiana Civil Code Article 1839 because Jaber's April 16, 2021 email repeatedly refers to the parties as "partners."[71] This argument fails for multiple reasons. For starters, Wimsatt cites no authority that supports applying equitable-estoppel principles here.[72] For that reason alone, Wimsatt's equitable-estoppel counterargument is forfeited and so necessarily fails. *See, e.g.*, *Stevens*, 17 F.4th at 574 (concluding that litigant forfeited an argument on an issue by failing to "cite a single authority or case relevant to the [issue]").

Forfeiture aside, Wimsatt's equitable-estoppel argument fails on the merits. That is because Wimsatt fails to point to competent summary-judgment evidence from which a reasonable jury could find that the  elements of equitable estoppel are met. "Even if the Louisiana Supreme Court were to allow equitable estoppel to overcome an Article 1839 defect, it would require the ordinary elements of estoppel

---

[69] *Id.* at 7–8.

[70] ECF No. 53-6 at 1–8.

[71] ECF No. 57 at 5–8; *see also* ECF No. 57-1 at 2–4 (Jaber's April 16, 2021 email).

[72] ECF No. 57 at 5–8. The only authorities cited relate to contract formation, partnership formation, and the manner in which a partnership may acquire immovable property. *Id.* (citing LA. CIV. CODE ANN. arts. 1906, 2802, 2806). No cited authority involves equitable estoppel.

to be met: a representation, justifiable reliance, and a detrimental change to one's position because of that reliance." *Schmidt*, 598 F. App'x at 259 (citing *Wilkinson v. Wilkinson*, 323 So. 2d 120, 126 (La. 1975)). Wimsatt's response fails to point to any evidence from which a reasonable jury could find that those elements are met.[73]

### 2.    The Right to Sue Personally for the LLC's Damages

Jaber is entitled to summary judgment dismissing Wimsatt's second cause of action for the independent reason that Wimsatt fails to carry her burden to point to competent summary-judgment evidence creating a genuine dispute as to Wimsatt's right to sue for damages incurred by 3101 Palmyra, LLC, the entity that owned the Palmyra Property before it was validly quitclaimed to Jaber in January 2020.

For essentially the same reasons given in Section III(A)(2) of this Order and Reasons, Wimsatt fails to create a genuine dispute as to whether her second cause of action belongs to her, personally, rather than to 3101 Palmyra, LLC. Wimsatt did not own the Palmyra Property immediately before the January 2020 quitclaim; 3101 Palmyra, LLC did. Thus, any alleged damage flowing from that sale—including Jaber's retention of the sale proceeds—would constitute "damage sustained by [3101 Palmyra, LLC]," not damage sustained by Wimsatt, individually. *Johnston*, 359 So. 3d 896, 920 (internal citations omitted). And because that alleged damage is based on the "the loss suffered by [3101 Palmyra, LLC] itself and the diminution in its assets," Wimsatt's claim is an "indirect" claim "held by [3101 Palmyra, LLC], not its owner." *Id.* at 921.

---

[73] *Id.* at 5–8.

21

Wimsatt's only counterargument is the same counterargument the Court considered and rejected in Section III(A)(2) of this Order and Reasons. It fails as to her second cause of action for the same reasons it fails as to her first cause of action.

## C.    Third Cause of Action

Jaber contends that the Court should dismiss Wimsatt's third cause of action for "unlawful encumbrance of a partnership asset." This cause of action rests on Wimsatt's allegation that Jaber leased the Peniston Property to a friend for one year for $2,500 per month in September 2020, but Jaber failed to deposit three months of rental income (for September, October, and November 2020) into the Peniston Property's bank account.[74] Wimsatt alleges that Jaber's conduct amounts to a breach of fiduciary duty and "potentially" conversion of the alleged partnership's funds.[75]

Assuming *arguendo* that Wimsatt created a genuine dispute as to the existence of a partnership with Jaber, Wimsatt's third cause of action still cannot survive summary judgment for at least two independent reasons. First, Wimsatt effectively abandoned her third cause of action by failing to make any argument opposing dismissal of it in her summary-judgment response.[76] *See, e.g.*, *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff "abandoned" a claim by failing to defend against its dismissal in response to dispositive motions); *Batterton v. Tex.*

---

[74] ECF No. 1 at ¶¶ 47–54.

[75] *Id.* at ¶ 53.

[76] The only reference to the third cause of action in Wimsatt's summary-judgment briefing is in the background section, where Wimsatt summarizes her allegations. ECF No. 57 at 1. Wimsatt's response does not address any of Jaber's arguments for dismissal of the claim.

*Gen. Land. Off.*, 783 F.2d 1220, 1224–25 (5th Cir. 1985) (a pleaded theory was "waived" when it was not raised in opposition to a motion for summary judgment).

Second, Wimsatt fails to carry her burden to identify competent summary-judgment evidence from which a reasonable jury could find that Jaber failed to charge his friend for rent or was paid rent but kept the rent for himself.[77] True, Wimsatt alleges "[u]pon information and belief" in her verified complaint that she "believes" that Jaber "either failed to charge his friend rent for three months, or was paid rent and kept the funds personally."[78] But this allegation is not competent summary-judgment evidence because Wimsatt makes it on information and belief—not on personal knowledge; it therefore does not comply with Rule 56(c)(4). *See, e.g.*, *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 n.79 (5th Cir. 2001) (statements made "on information and belief" do not satisfy the personal-knowledge requirement and "cannot be utilized on a summary judgment motion" (internal citation and quotation marks omitted)). What is more, Wimsatt's verification excepts "allegations alleged upon information and belief" from Wimsatt's sworn statement that the complaint's allegations "are true based on my personal knowledge"; Wimsatt merely "believe[s]" the allegations "to be true."[79]

---

[77] ECF No. 57 at 1–8.
[78] ECF No. 1 at ¶ 50.
[79] ECF No. 1-3 at ¶ 2.

Accordingly, because Wimsatt fails to identify competent summary-judgment evidence from which a reasonable jury could find that Jaber failed to charge his friend for rent or was paid rent but kept the rent for himself, Wimsatt fails to create a genuine dispute as to whether (a) Jaber breached any fiduciary duty or (b) converted funds owed to the alleged partnership. Jaber is thus entitled to summary judgment dismissing Wimsatt's third cause of action for this second independent reason.

### D.  Fourth Cause of Action

Jaber is entitled to summary judgment dismissing Wimsatt's fourth cause of action for "conversion of goodwill associated with" the parties' Airbnb account. Wimsatt effectively abandoned her fourth cause of action by failing to make any argument opposing dismissal of it in her opposition to Jaber's motion for summary judgment. *See Black*, 461 F.3d at 588 n.1; *Batterton*, 783 F.2d at 1224–25. And for good measure, Wimsatt expressly abandoned this cause of action during the April 25, 2024 oral argument. Accordingly, for each of these independent reasons, Jaber is entitled to summary judgment dismissing Wimsatt's fourth cause of action.

24

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Jaber's motion[80] for summary judgment is **GRANTED**. Wimsatt's claims are **DISMISSED WITH PREJUDICE**. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58.

**IT IS FURTHER ORDERED** that Jaber's "Rule 12 and/or Rule 56 Motion"[81] is **DENIED** as moot.

New Orleans, Louisiana, this 14th day of May, 2024.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[80] ECF No. 53.
[81] ECF No. 37.